In the Matter of WILLIAM A. EVANS, Petitioner, *v.* WILLIAM K. BUSCAGLIA, as Director of Erie County Sales Tax Division, Respondent.

In the Matter of SKY-LARK DELAWARE, INC., et al., Petitioners, *v.* WILLIAM K. BUSCAGLIA, as Director of Erie County Sales Tax Division, Respondent.

Fourth Department, April 6, 1967.

*Offermann, Fallon & Mahoney* (*Leo J. Fallon* of counsel), for William A. Evans, petitioner.

*Williams, Stevens & McCarville* (*E. W. Dann Stevens* of counsel), for Sky-Lark Delaware, Inc., and others, petitioners.

*Norman A. Stiller, County Attorney* (*John S. Ryan* of counsel), for respondent.

DEL VECCHIO, J. These proceedings, commenced under article 78 of the CPLR for a review of determinations made after a hearing by respondent as Director of the Erie County Sales Tax Division assessing a deficiency against petitioners, have been transferred to this court for disposition in the first instance pursuant to CPLR 7804 (subd. [g]).

Petitioners are owners and operators of gasoline stations located in Erie County, where a 3% sales tax was in effect for the period July 1, 1964–December 31, 1964. Regulation 14, promulgated by respondent shortly prior to July 1, 1964, provided that the sales tax on sales of motor fuel and Diesel motor fuel at retail service stations should be imposed at the rate of $.008 per gallon. Based upon this regulation, respondent determined that there was a deficiency in the sales tax payments remitted by each of petitioners for the last six months of 1964. The deficiencies were paid under protest and these proceedings were instituted to recover the amounts so paid.

The retail price of fuel sold at petitioners' stations is regularly lower than that charged at standard brand stations. It is their contention that, as applied to them, the tax rate of $.008 per gallon is erroneous, illegal, improper, arbitrary and capricious and results in the imposition of a sales tax substantially in excess of 3%.

At the outset we should dispose of respondent's claim that petitioners lack standing to maintain these proceedings because the incidence of the sales tax is upon the ultimate purchaser. Petitioners are required by the terms of the Erie County Sales Tax Resolution to collect and pay over the tax; they are therefore entitled to challenge the validity of the deficiency assessments (*Roosevelt Raceway* v. *County of Nassau,* 18 N Y 2d 30, 41). Furthermore, the finding by respondent that petitioners collected sales tax from their customers at the rate of $.008 per gallon during the period in question is without support in the record. The record shows that, at these cut-rate stations, sales taxes were collected at a lesser rate per gallon than the rate of $.008. Accordingly, the deficiency assessments must be borne by petitioners themselves. This makes inapplicable the maxim *de minimis non curat lex.*

As to the merits of the proceeding: In reviewing the determinations of the Director we must bear in mind that our scope is limited " to ascertaining whether or not there is a rational and legal basis for the decision of the administrative body " (*Matter of Colgate-Palmolive-Peet Co.* v. *Joseph,* 308 N. Y. 333, 338).

Whether the deficiency determinations may be sustained depends upon the validity of regulation 14 promulgated by the Director, which established a uniform sales tax rate of $.008 per gallon on sales of motor and diesel motor fuels.

Pursuant to statutory authority (L. 1964, ch. 621), the Board of Supervisors of Erie County on June 2, 1964 adopted a resolution empowering the Sales Tax Director to impose a tax on the

sale of motor and Diesel motor fuel at retail service stations at a specified amount per gallon in lieu of the imposition of such tax on total receipts. The same resolution also contained the following provision: "The Director shall by regulation prescribe a method or methods or a schedule or schedules of the amounts to be collected from purchasers in respect to any receipt upon which a tax is imposed by this resolution so as to eliminate fractions of one cent and *so that the aggregate collections of taxes by a vendor shall, as far as practicable, equal three per per centum of the total receipts from the sales of such vendor upon which a tax is imposed by this resolution."* (Emphasis supplied.) Thereafter, respondent promulgated regulation 14, which provided: "On the sales of motor fuel and Diesel motor fuel made at retail service stations the tax is imposed at a specified amount per gallon which *at the rate of three per centum (3%)* amounts to $.008 per gallon (8/10th of one cent [1¢] per gallon)." (Emphasis supplied.)

Although it might seem from the foregoing that resolution 14 was an apparent attempt to impose the 3% sales tax on a per gallon basis, the difficulty is that, in view of the retail price of motor fuel charged by petitioners, the imposition of a tax rate of $.008 per gallon on sales made at petitioners' stations would in almost every case result in the collection of a sales tax far in excess of 3%.

Testimony given at hearings held by respondent revealed that the rate of $.008 per gallon was devised by the Sales Tax Division after a study had been made by division employees who visited 12 standard brand service stations in Erie County during March and May, 1964 to determine the retail selling prices of gasoline. (At that time there were approximately 1,400 stations in the county; no cut-rate stations were visited in the survey and no attempt was made to determine what percentage of total gasoline sales were made by cut-rate stations.) The range of gasoline retail prices at stations visited was found to be from $.219 to $.359 per gallon and 90% of sales were made on a dollar basis, i.e., sales of one dollar, two dollars or three dollars rather than on sales of a definite number of gallons. Based upon this information and applying the whole cent tax collection schedule previously devised to sales at various prices and in multiples of from one to three dollars, the Division fixed a uniform sales tax rate of $.008 per gallon as a tax rate likely to assure an appropriate tax return to the county on motor fuel sales. The testimony of the Deputy Sales Tax Director established however that this rate would return the amount which was deemed to represent the 3% tax only when the retail price

of motor fuel equaled more than $.259 per gallon on sales in one dollar lots, only when the price equaled $.289 per gallon on sales in two dollar lots and only when the price reached $.309 per gallon on sales in three dollar lots. On any sales made below these prices a tax rate of $.008 per gallon would return a tax in excess of the prescribed 3%.

The uncontroverted evidence established that petitioner Evans' gasoline sold for as low as $.199 a gallon and that Sky-Lark's was priced as low as $.149. On the other hand, Evans' never exceeded $.249 per gallon and Sky-Lark's highest price, including $.005 sales tax, was $.269 per gallon. The sales tax being collected by the Sky-Lark stations was a rate which had been determined, after consultation with their accountant and attorney, to be one which would return more than 3% on the dollar on sales made. In view of these circumstances, petitioners did not collect sales tax at the rate of $.008 per gallon, which would have represented a tax of over 55% more than 3% of taxable receipts.

We conclude that, as applied to petitioners, the tax rate of $.008 per gallon (which was arrived at without regard to cut-rate motor fuel prices) was without rational basis, and was illegal insofar as it uniformly required the collection of a sales tax which substantially exceeded the authorized rate of 3%. The Director should have provided a sliding scale by which the tax per gallon would have varied with the retail price per gallon like that now in effect under New York State sales tax regulations. Respondent concedes that petitioners had each computed and remitted a sales tax on the basis of approximately 3% of total dollar sales, less the State tax which is included in the retail price of gasoline. Consequently, the final determinations should be annulled and the petitions granted with costs, on the ground that the tax rate of $.008 per gallon, as applied to petitioners, was improperly imposed. Petitioners are entitled to a refund of the amounts of the deficiencies paid under protest, together with interest thereon and costs.

WILLIAMS, P. J., GOLDMAN, HENRY and MARSH, JJ., concur.

Determinations unanimously annulled and petitioners granted a refund of the amounts paid under protest, together with interest thereon and costs.